## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**NED SOLOMON,**

        **Plaintiff,**

**v.**                                            **Case No.  8:05-cv-2088-T-TBM**

**MICHAEL J. ASTRUE[1],**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/

# O R D E R

The Plaintiff seeks judicial review of the denial of his claim for Supplemental Security Income payments.  For the reasons set out herein, the decision is affirmed.

## I.

Plaintiff was fifty-two years of age at the time of his administrative hearing in June 2005.  He stands 5'10" tall and weighed 200 pounds.  Plaintiff has a sixth grade education in Jamaica, with little ability to read or write.  His past work was as a construction laborer, fruit picker, and dish washer.  Plaintiff applied for Supplemental Security Income payments in January 2004, alleging disability as of 1988.  At the hearing, this date was amended to the date of application.  Plaintiff claimed disability by reason of foot and back pain.  His application was denied originally and on reconsideration.

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

The Plaintiff, then received a *de novo* hearing before an Administrative Law Judge ("ALJ").  The Plaintiff was represented at the hearing by counsel and testified in his own behalf.  Additionally, a vocational expert was called by the ALJ.  In essence, Plaintiff testified he could not longer work at any job because of an injured foot and foot and back pain. Plaintiff testified that he last worked in 1988, when he was injured and had to have surgery on his left foot.  In 1996, he developed back pain and thereafter received some physical therapy. He claims that the condition of his foot prevents him from standing too long.  His foot gets numb, and he uses a cane for balance when he goes outside.  By his description, his foot aches,  stays swollen, and is weak and tender.  He has aches and pains in his back as well.  He cannot bend and touch the floor.  He can reach above his shoulders.  He suffers high blood pressure as well.  It makes him dizzy for a few seconds several times a day.  Plaintiff indicated he had not sought other types of work because his former work was what he knew how to do.

Plaintiff estimates that he can only lift 15 pounds, but he unable lift his three-year-old twin children.  He can sit for 30 minutes, stand for 15 minutes, and walk about a quarter-mile.  On a typical day, he mainly sits around.  He does no household chores because of his foot and back.  He lies down on a couch and raises his leg with a pillow to relieve the pain and aching.  He has difficulty sleeping at night, and he gets headaches and pains in his foot and back.  His medication makes him go the bathroom four times a day.

Plaintiff did six years of schooling in Jamaica.  Under close questioning, he claims that he cannot read and was able to get by without it in school and on the job.  (R. 377-93).

The ALJ also took testimony from Joyce Courtright, a vocational expert ("VE"), who testified on an assumption of a person of Plaintiff's age, education, and work experience

capable of light exertional work with limitations for occasional postural activities and no exposure to heights or hazards. On this hypothetical, the VE opined that such person could perform such jobs as bench assembly, machine tending without loading and off-bearing, such as injection molding machine, and wrap and pack. If Plaintiff's testimony concerning his limitations were fully credited and assumed in the hypothetical, such person could not perform any job.

On questioning by Plaintiff's counsel, the VE stated that the addition of a sit/stand option to the first hypothetical would reduce the number of such jobs but not eliminate them entirely. Likewise, if such person were required to sit full-time, the number of such jobs would be reduced. If such person also had to elevate his foot twelve to eighteen inches, it might be tolerated but above that would be outside what most employers would allow. The cited jobs do not require reading or writing as a general rule. (R. 393-96).

Both at the beginning of the hearing and at its conclusion, Plaintiff's representative requested mental health consultative evaluation.

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of June 27, 2005, the ALJ determined that while Plaintiff has severe impairments related to a disorder to his left foot, a back disorder, and hypertension, he nonetheless had the residual functional capacity to perform light exertional work with limitations. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion,

3

the Plaintiff was determined to be not disabled.  (R. 17-25).  The Appeals Council denied

Plaintiff's request for review, and the ALJ's decision became the final decision of the

Commissioner.


II.

In order to be entitled to Social Security disability benefits and Supplemental

Security Income payments, a claimant must be unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which . . . has

lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42

U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one

that "results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at §

423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards.  See id.

at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d

1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate

that she has done so.  While the court reviews the Commissioner's decision with deference to

the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of

4

Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred in failing to fully and adequately consider the Plaintiff's allegations of illiteracy;

5

(2) The Commissioner erred in failing to find Plaintiff disabled under Medical-Vocational Rule 202.09.

The two claims are related.  By his first claim, Plaintiff criticizes the failure of the ALJ to fully explicate his findings on whether the Plaintiff could read and write.  By his argument, whether he was literate or illiterate was pivotal to the decision in this case.  He argues that since the ALJ did not expressly discredit his allegations that he could not read or write, the allegations should be accepted as true and, by his second claim, under Rule 202.09 of the Medical-Vocational Guidelines (the "Grids"), he should be determined to be disabled.

By my consideration, the critical finding by the ALJ which is the subject of the court's review is as follows:

> . . . the claimant is 52 years old.  For the purpose of this decision, he is an individual closely approaching advanced within  the meaning of the regulations.  *The claimant has a sixth grade education, defined as marginal*.  If the claimant were capable of performing a full range of light work, a finding of not disabled would be reached by application of Medical-Vocational Rule 202.10.  Strict application of this rule is not possible, however, as the claimant has non-exertional limitations that narrow the range of work he is capable of performing.

(R. 23) (emphasis supplied).  When the record is considered in full, the finding of a marginal education implicitly discounts Plaintiff's claim that he could not read or write.  If there is substantial evidence to support the finding, then the decision is appropriately affirmed.

As noted above, under this court's standard of review, the court is constrained to accept the factual conclusions of the ALJ even if it disagrees or otherwise doubts those conclusions as long as they are supported by substantial evidence.  Here, Plaintiff testified that he could not read or write.  While the record is not entirely consistent on this point, this is a

6

matter largely of the Plaintiff's own making through his inconsistent reporting.  In any event, the resolution of this inconsistent reporting was for the ALJ not this court.  By my review, when the decision is considered in full, the clear implication of the finding that Plaintiff was possessed of a marginal education is that the ALJ rejected his claim that he could not read or write.  While it is a close issue because the evidence is rather sparse, under the applicable standard, the ALJ's conclusion that Plaintiff had a marginal education and thus was not illiterate, is supported by substantial evidence.[2]

According to the regulations, a "marginal" education means "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. . . ." See 20 C.F.R. § 404.1564(b)(2).  Generally, formal schooling at a sixth grade level or less "is a marginal education."  Id.  The record evidenced the Plaintiff's ability to communicate in English, albeit with a Jamaican accent.  His work history prior to the injury to his foot suggests that his language skills and reasoning skills, even if not formerly well-developed, were adequate to the nature of his unskilled work.  At the hearing, he evidenced the ability to

---

[2]The evidence supporting the conclusion comes first from the Plaintiff who consistently reported that he had six years of education in Jamaica and from his testimony to the ALJ that his lessons and exams were all in English.  As his testimony suggests, upon close questioning by the ALJ, he was at a loss to explain how he was able to perform if he couldn't read at all.  Beyond his formal schooling, the administrative record contained evidence from which the ALJ could conclude Plaintiff was not illiterate as that term is defined under the regulations.  Thus, Plaintiff's disability report, however produced, indicated that he reported he could read English and write more than his name in English.  Later, during a functional capacity evaluation Plaintiff again reported that he had a sixth grade education and that he was going to the library to learn to read better.  While Plaintiff at another time reported something different and he may have had help filling out a form, it was for the ALJ to resolve the apparent inconsistencies.  I am obliged to conclude that the reasons cited by the ALJ in support of his conclusion concerning Plaintiff's illiteracy are more than a scintilla of evidence, and the conclusion adequately supported.

do a simple mathematical calculation on questioning by his counsel.  Thus, I conclude that the ALJ's finding that Plaintiff's educational level was marginal is supported by substantial evidence.

On this finding, given the Plaintiff age and work history, the ALJ could properly look to Rule 202.10 of the Grids as a guide for decision.  By that Grid rule, a finding of not disabled was indicated.  Here, Plaintiff does not challenge the ALJ's use of a vocational expert or the opinions of that expert.  By the VE's testimony, even with a limited ability to read or write, Plaintiff could do jobs available to him in the national economy.  Accordingly, I am obliged to conclude that the finding that Plaintiff could perform work available to him and thus was not disabled is also supported by substantial evidence.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 3rd day of August 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record